The opinion of the court was delivered by
Nioholls, O. J.
On the 29th of April, 1894, Gladys Gannon, a little girl, five years and nine months old, died at the Hospital, in New Orleans, by reason of having had her thigh crushed or broken the day previous by one of the wheels of a car belonging to the New Orleans Oity & Lake Railroad Company. The present action is one by the mother of the child seeking a judgment against that company and the New Orleans Traction- Company for fifteen thousand dollars damages as resulting from the- injuries so received. Plaintiff asks five" thousand dollars damages in her own right and ten thousand dollars damages under and through the right of action which the child herself had. The case presented to us is one of those distressing accidents constantly occurring in a crowded city upon the streets of which railway companies have been permitted to operate their cars. We recognize the fact that the driver of a car may be called upon to exercise much greater caution where he sees ahead of him a child on or near the track upon which he is driving than he would were he to see a grown person occupying the same position. The accident in this case occurred at the corner of Oonstance and Bordeaux streets. The former is quite a narrow street-on which the defendant company, under a franchise from the city, has run one of its tracks. That track was then used for horse cars going from the upper to the lower part of the city. Oonstance street is parallel to and Bordeaux is perpendicular to the Mississippi river. On the morning of the accident, about 9 o’clock, the mother of the child, who occupies a house between Bordeaux street and the street below, on the side of the street known as the lake side of the *1004 street, in contradistinction to the opposite side, known as the river side, sent her over to a grocery at the upper corner of Constance and Bordeaux streets, on the river side of Constance. She went alone with a basket upon her arm to purchase charcoal at the corner stand. She had frequently before been sent alone on similar errands without injury. The mother watched her but from the window of her house. The child entered the grocery, made the purchase and ■came out upon the sidewalk with another child supposed to be the daughter of the groceryman. She had a sunbonnet upon her head and the basket on her arm. Stopping a moment on the sidewalk to take from the other child some fruit handed her, she attempted to pass across the street.
After a careful examination of the whole testimony, we have reached the conclusion that if any blame at all could attach to the idriver it would have been found in the interval of time between the crossing of the gutter by the child and her striking the mule or car. 'The car was being driven slowly — the driver had his hand upon the brake prepared to act as soon as anything should arise calling for action. It would be utterly unreasonable to exact that the mere presence of a child five or six years old upon the sidewalk or banquette with a basket upon her arm should force the driver of a street •car to bring it to a dead stop upon the bare possibility that it might leave the place it was then occupying securely, to either walk or run suddenly into danger. There was nothing, in our opinion, in the --situation to indicate to the driver that the child would attempt to •cross the street. The witness Huddlestone and the driver both state ’this to have been the fact. In reference to occurrences taking place .after the child moved across the gutter, Paddock, another witness, ■says he applied the brake before she struck the mule or car. He also says that he saw the child all the time and did not see Huddleistone at all. We do not know whether the witnesses were separated •or not, but the driver seems to have a thorough knowledge of the ■child’s position and actions. We do not attach to Huddlestone’s statement that Paddock was looking at him at the time of the accident the same importance that plaintiff’s counsel does. It is directly contradicted by Paddock, and the preciseinstant that the driver may have looked in the direction of Huddlestone, if he did so at all, is a matter too liable to mistake to have much weight — nothing is so rapid and shifting as glances from the eye. Huddlestone *1005 was on the upper side of Bordeaux street, and there was-nothing in his presence there calculated to call attention to him. Had he been on the lower side the driver might have supposed he was waiting to take the car. We understand the evidence to show that the child left the door of the grocery, walked diagonally to the corner of Constance and Bordeaux streets — paused there to take some fruit from a companion child and then walked perpendicularly across the street to the track — a distarce of eleven feet and a half. The driver says she ran across. Montgomery, a witness, that she walked; but whether she walked or ran the driver says that as she approached, and before she struck the mule or car, he applied the brakes. We cannot say, under the evidence, that he did not act as promptly as the occasion called for. There was certainly little time for action. Possibly a quick, loud call to her from the driver might have caused the child to halt, and been more efficacious than an application of the brakes, but no suggestion was made, either in the pleadings or argument, that he was guilty of negligence or omission of duty in not having done so. The precise point where the collision took place has not been established. The mother and Huddleston'e were on the opposite side of the street and their views were masked by the passing of the mule. We think, however, that the child must have first come into collision with the mule, but exactly where we can not say. The establishment of that fact is important only in testing whether or not the condition of the brakes should enter as a factor in the determination of the cause. Paddock says the shoe of the car was worn and that the car slipped possibly two feet further than it should. His answers are not as clear as would be desirable as to the cause of the slipping, as he refers to the slippery condition of the track on that morning as one of the causes. In answer, to a question whether he could have avoided the accident had the brake been in good order, he answered positively he could not. This answer was evidently supposed by plaintiff’s counsel to have been made with reference to the driver’s claim that the child struck the dashboard and did not strike the mule, for the question was repeated to him, “If the brake had been in good order could you have avoided the accident had the child struck the mule? To this he replied, Well, then he might. The question as again repeated was awkwardly put, but the obvious meaning of it was, “ If the child had struck the mule, could you have avoided the accident *1006 with the brakes in the condition they were then in.” To this he replied, he could not say that; but he certainly could have done so if the child had struck the front part of the mule — but he immediately added, there was a doubt in his mind; the car might have slipped for all he knew.
Under the evidence, it is difficult for us to fix with certainty what part the bad condition of the brake had in not preventing the accident. The driver says the car ran about six feet and a half before if came to a dead stop — that it slipped two feet and a half further than it should have done after the brakes were on. Did, or did not, the fact that the car stopped make any difference in the actual result? Did the slipping cause the injury, or merely aggravate it, and if it aggravated it merely, to what extent did it do so? Would the accident have resulted in something short of death had the car been stopped earlier? Would not the same result have occurred had the car'stopped two feet short of where it did?
The District Court thought the case too close a one to justify a judgment — that the evidence did not come up to the standard of the “reasonable certainty” exacted from a plaintiff.
We adopted as correct the statement of the witness Montgomery that the first point • at which the collision occurred, was about the flank of the mule. This brings the case within the statement of the driver that “ perhaps ” he might have stopped the car in time to have prevented the accident had the shoe of the car been in good condition. Had the evidence shown, with reasonable certainty, that the distance between the point of original collision and the wheel of the car was such as to have made it possible for the accident to have been avoided had the car been supplied with proper shoes, we would have reversed the judgment, but one of the links in plaintiff’s evidence is missing, and we do not feel authorized to supply it by inferences. Plaintiff has the burden on her throughout. She has to connect the defective shoe with the accident, and establish affirmatively that had the shoe been in good condition the accident could have been prevented. The effort of both plaintiff and the defendant seems to have been directed to the conduct of the driver, instead of to the defectiveness of the appliances and its results.
The case comes before us on appeal from a judgment of the District Court adverse to the plaintiff. We see no error in that judgment and it is hereby affirmed.